# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 3:16-CV-01889-M |
| | § | |
| vs. | § | |
| | § | |
| 2 TACOS BAR & GRILL, LLC, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Joe Hand Promotions, Inc.'s Motion for Partial Default

Judgment against 2 Tacos Bar & Grill, LLC, d/b/a 2 Tacos Bar & Grill ("2 Tacos"), and Jesus M.

Hinojosa ("Hinojosa") [ECF No. 14].  For the reasons provided below, the Motion is

**GRANTED**.

## I.    BACKGROUND[1]

This is an anti-piracy case brought under the Federal Communications Act of 1934, as

amended, 47 U.S.C. §§ 553, 605, ("FCA").  Plaintiff distributes sports and entertainment

programming, and purchased and retained the commercial exhibition rights to all undercard

bouts and the main prizefight of "UFC 162: Silva v. Weidman," broadcasted on July 6, 2013 (the

"Event").  Pl. Ex. B. Hand Aff. ¶ 4.  Plaintiff then sold commercial distribution rights to its

customers, including casinos, racetracks, bars, restaurants, and nightclubs.  *Id.*  On July 6, 2013,

Plaintiff alleges that the Event was broadcast on multiple televisions at the 2 Tacos establishment

---

[1] The Court accepts as true the facts alleged by Plaintiff in its Complaint and supporting affidavits, as 2
Tacos and Hinojosa have failed to answer.  *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d
1200, 1206 (5th Cir. 1975).

without Plaintiff's prior approval or payment of the proper commercial sublicense fee to exhibit the Event. *Id.* ¶ 9.

On June 29, 2016, Plaintiff filed its Complaint against 2 Tacos and its owners, Hinojosa and Abel Jimenez ("Jimenez"), alleging that Defendants were liable for violating the FCA and seeking statutory damages and attorney's fees. Compl. ¶¶ 2–4, 16–19. Jimenez was served on July 9, 2016. ECF No. 6. Hinojosa and 2 Tacos were served on July 14, 2016. ECF Nos. 5, 7. On August 1, 2016, Jimenez, acting pro se, filed his answer and generally denied each allegation in the Complaint. ECF No. 8. Neither 2 Tacos nor Hinojosa have answered or otherwise responded to the Complaint. On August 11, 2016, the Clerk of Court entered default against 2 Tacos and Hinojosa. ECF No. 12.

## II.   LEGAL STANDARD

Rule 55 governs applications for default and default judgment. Fed. R. Civ. P. 55. Three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond within the time required by the Federal Rules of Civil Procedure. *Id.* The Clerk will enter a default when the party's default is established by an affidavit or otherwise. *Id.* After the entry of default, a plaintiff may apply to the court for a default judgment. *Id.*

Default judgment is a drastic remedy, resorted to only in extreme situations. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir.1989). However, it is a remedy generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977). In determining whether to enter default judgment, district courts should examine: (1) whether material issues of fact are at issue; (2) whether there has been

substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

## III.   DISCUSSION

### a.  DEFAULT JUDGMENT

Neither 2 Tacos nor Hinojosa answered or otherwise responded within the twenty-one days allotted under the Federal Rules, which Plaintiff demonstrated by affidavit.  Fed. R. Civ. P. 12(a)(1)(A)(i); ECF No. 11-1 ¶ 4.  Therefore, the Clerk's entry of default against 2 Tacos and Hinojosa was proper.  Plaintiff now seeks for default judgment against 2 Tacos and Hinojosa.

Here, after considering the record as a whole, the Court finds that a partial default judgment against 2 Tacos and Hinojosa is warranted.  First, as a corporation, 2 Tacos is neither a minor nor an incompetent person, nor can it be active in military service.  *See* Fed. R. Civ. P. 55(b)(2); 50 U.S.C. § 3931.  The record before the Court further indicates that Hinojosa is not a minor, incompetent, or in active military service.  *See* ECF Nos. 11-1 at 2; 11-2 at 1

In determining whether partial default judgment is appropriate, the Court next turns to the factors outlined in *Lindsey*.  161 F.3d at 893.  These factors favor granting default judgment against 2 Tacos and Hinojosa. There are no material issues of fact at issue here; because 2 Tacos and Hinojosa have both failed to respond, this Court takes the facts from Plaintiff's pleading as true.  *See Nishimatsu*, 515 F.2d at 1206.  There has been no substantial prejudice against 2 Tacos and Hinojosa; all Defendants were properly served, the grounds for default against 2 Tacos and Hinojosa were clearly established, and the Clerk properly entered default against them.  There is nothing before the Court indicating that 2 Tacos' and Hinojosa's failure to appear was a good

faith mistake or excusable neglect.  Entering default judgment against 2 Tacos and Hinojosa,

who have taken no action to respond to this action, is not "harsh."  *See Lindsey*, 161 F.3d at 893.

Defendants 2 Tacos and Hinojosa have had over six months to respond to Plaintiff's Complaint,

and over three months to respond to Plaintiff's Motion for Partial Default Judgment, which

mitigates the harshness of a default judgment.  *See John Perez Graphics & Design, LLC v.*

*Green Tree Inv. Grp., Inc.*, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (Lynn, J.).

Furthermore, there appears to be sufficient basis in the pleadings to support a default

judgment, and damages can be calculated with reasonable certainty without a hearing.  *Lindsey*,

161 F.3d at 893; *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).  Plaintiff's Complaint alleges

that Defendants, "[b]y unauthorized satellite transmission or, alternatively, by unauthorized

receipt over a cable system, . . . willfully intercepted or received the interstate communication"

of the Event and then "unlawfully transmitted, divulged and published said communication" to

patrons.  Pl. Compl. ¶ 12.  Through these acts, Plaintiff alleges, Defendants "pirated Plaintiff's

licensed exhibition of the [Event] and infringed upon Plaintiff's exclusive rights while avoiding

proper authorization and payment to Plaintiff."  *Id.* ¶ 14.  Defendants' actions, Plaintiff alleges,

violate 47 U.S.C. §§ 605, for which Plaintiff has standing to bring a private right of action.  *Id.*

¶ 17–19.

A person violates § 605 when he "intercept[s] any radio communication . . . or receive[s]

or assist[s] in receiving any interstate or foreign communication by radio and use[s] such

communication . . . for his own benefit or for the benefit of another not entitled thereto."

47 U.S.C. § 605(a).  Similarly, one violates § 553 by "intercept[ing] and receiv[ing] or assist[ing]

in intercepting or receiving any communications service offered over a cable system" without

authorization.  *Id.* § 553(a)(1).  The unauthorized interception of satellite or cable transmissions

violates both §§ 553 and 605.  *Enmt. By J & J Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 774 (S. D. Tex. 2002).

The Court concludes that Plaintiff's Complaint contains facts sufficient to establish the necessary elements of its § 605 violation claims against 2 Tacos and Hinojosa.  The pleadings establish that the Event was transmitted via satellite uplink, and subsequently transmitted interstate to cable systems and satellite television companies via satellite signal.  Pl. Compl. ¶ 9. The pleadings further establish that Defendants intercepted the communication of the Event without authorization and broadcasted to patrons at 2 Tacos for their own commercial benefit. *Id.* ¶ 12–14.  For evidence, Plaintiff relies on the uncontroverted affidavit of Dennis Burns to support its allegation that Defendants committed a violation of 47 U.S.C. §§ 553 and 605.  Pl. Mot. Ex. B(3), ECF No. 15-5.  Burns's affidavit states that, on July 6, 2013, he observed a broadcast of the Event over thirteen flat screen televisions at 2 Tacos in the presence of approximately 70 patrons.  *Id.* at 1.  Plaintiff also attaches the affidavit of its President, Joe H. Hand, which establishes that 2 Tacos did not pay a commercial sublicense fee to broadcast the Event.  ECF No. 15-2 ¶ 8.  Plaintiff's uncontroverted evidence has, therefore, established a viable claim for relief under § 605 of the FCA.

### b.  DAMAGES

Having so concluded, the Court must determine whether damages can be calculated without a hearing, pursuant to Rule 55(b)(2).  Fed.R.Civ.P. 55(b)(2).  In the default judgment context, damages may "be entered without a hearing" if "the amount claimed is a liquidated sum or one capable of mathematical calculation."  *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir.1979).  That is, a hearing is not necessary where the amount of damages can be determined with certainty, by reference to the pleadings and supporting documents, and where a

hearing would not be beneficial.  *T–Mobile USA Inc. v. Shazia & Noushad Corp.*, No. CIV 3:08–cv–00341, 2009 WL 2003369, *3 (N.D. Tex. July 10, 2009) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir.1993)).

### i.  STATUTORY DAMAGES

For its injuries associated with Defendants' alleged violation of § 605 of the FCA, Plaintiff seeks statutory damages, including interest, costs, and attorney's fees.  Compl. ¶ 19.  A person injured by a violation of § 605 may be awarded actual or statutory damages.  47 U.S.C. § 605(e)(3)(C)(i).  Statutory damages for each violation of the section must be awarded in an amount no less than $1,000 and no more than $10,000, as the Court in its discretion finds just. *Id.* § 605(e)(3)(C)(i)(II).  If the Court finds that a violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may, in its discretion, increase the damage awarded by an amount of not more than $100,000.  *Id.* § 605(e)(3)(C)(ii).  An aggrieved party who prevails shall receive full costs, including reasonable attorney's fees.  *Id.* § 605(e)(3)(B)(iii).

Plaintiff seeks statutory damages in the amount of $10,000.00, the statutory maximum. ECF No. 14 ¶ 21.  Plaintiff argues that "it would be impossible to determine the full extent of the profits lost" and damage sustained as a result of Defendants' violation.  *Id.* ¶ 24.  Further, Plaintiff maintains that it should receive compensation because it has been deprived of the "value, benefits and profits derived" from the unauthorized broadcast of the Event, as well as the value of "business investment, business opportunities, reputation, and goodwill."  *Id.* ¶ 29.  In an affidavit, Plaintiff's president describes how unauthorized broadcasts cause "serious erosion" of Plaintiff's sales, resulting in a decrease in revenue and also of Plaintiff's customers, who may be unwilling or unable to compete with unauthorized broadcasters.  ECF No. 15-2 at 2–6.

Courts consider various factors, including the number of patrons in the establishment at the time of the violation and the licensing fee, in assessing statutory damages for violations of § 605. *See Joe Hand Promotions, Inc. v. Alima*, No. 3:13-cv-0889, 2014 WL 1632158, at \*4 (N.D. Tex. Apr. 22, 2014) (awarding base statutory damages of $5,000 when the licensing fee would have been approximately $1,500); *J & J Sports Prods., Inc. v. Beck*, No. L–13–57, 2013 WL 5592333, at \*2 (S.D. Tex. Oct. 9, 2013) (awarding base statutory damages of $5,000 when the licensing fee would have been between $1,200 and $1,600); *J & J Sports Prods., Inc. v. Q Café, Inc.*, No. 3:10–CV–2006–L, 2012 WL 215282, at \*1 (N.D. Tex. Jan. 25, 2012) (awarding base statutory damages of $10,000 when licensing fee would have been $1,600); *Al–Waha Enters.*, 219 F. Supp. 2d at 777 (awarding base statutory damages of $5,000 when the sublicense fee would have been at least $1,500).

The uncontroverted evidence indicates that there were 70 patrons at 2 Tacos at the time of the violation. ECF No. 15-5 at 1. Plaintiff's rate card for the Event further indicates that for a maximum occupancy of 165 people, the capacity of 2 Tacos, it would have cost $1,300 to legally broadcast the Event. ECF No. 15-4 at 1. The Court finds it reasonable, therefore, to award base statutory damages in the amount of $5,000. *See Beck*, 2013 WL 5592333, at \*2 ("[T]o adequately deter piracy, the cost of piracy must be significantly higher than the cost of buying a license.").

## ii.  ADDITIONAL DAMAGES

Plaintiff also seeks additional damages of $50,000, pursuant to 47 U.S.C. § 605(e)(3)(C)(II), alleging that 2 Tacos' and Hinojosa's actions were willful and "for purposes of direct or indirect commercial advantage or private financial gain." ECF No. 14 at 19. To deter pirating of cable and satellite broadcasts, court have awarded in damages multipliers of

three to eight (3 to 8) times the statutory damages as additional damages.  *Q Café, Inc.*, 2012 WL 215282, at *5.

To prove willfulness, Plaintiff argues that the Event's broadcast could not have been accessed innocently, and points to the affidavit of its president, Joe Hand, who established that Plaintiff's programming cannot be "mistakenly, innocently, or accidentally intercepted."  ECF No. 15-2 ¶ 11.  Instead, Hand's affidavit states, intercepting the Event's broadcast would require an act, such as use of a box or card to unscramble the signal, misrepresentation of a commercial establishment as a residential property, use of an illegal cable drop or splice, or other illegal unencryption devices.  *Id.*  Plaintiff argues that interception of the Event transmission was of sufficient complexity that Defendants could not have acted by mistake.  ECF No. 14 at 20. Further, for proof that 2 Tacos and Hinojosa acted for commercial advantage, Plaintiff points to the Texas Limited Sales, Excise and Use Tax Permit issued to 2 Tacos, which was active on the date of the Event, as well as a Facebook page advertising the Event at 2 Tacos.  ECF No. 15-1 at 1; ECF No. 15-7 at 1.

The Court concludes that 2 Tacos and Hinojosa acted willfully.  Given "the limited methods of intercepting closed circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance," courts have held that conduct such as that of 2 Tacos and Hinojosa in this case to be willful and for the purposes of commercial advantage.  *E.g.*, *Al-Waha Enters.*, 219 F. Supp. 2d at 777 (citing cases); *Beck*, 2013 WL 5592333 ("[I]t is obvious that commercial establishments show sports programs to draw business, not out of charity.").  However, the Court notes that there was no cover charge imposed to attend the Event, and Plaintiff does not allege that 2 Tacos was a repeat offender in broadcasting the Event.  Taking those facts into consideration, therefore, the Court in

8

its discretion will only award total damages of $15,000, or three times the base award amount.

*Al-Waha*, 219 F. Supp. 2d at 766 (awarding treble damages in a similar case); *Beck*, 2013 WL

5592333 (same); *see also Alima*, 2014 WL 1632158, at *5 (awarding four times the base

statutory damages in additional damages when a cover was charged to view the unauthorized

broadcast).  Plaintiff is thus entitled to a statutory damages pursuant to 47 U.S.C.

§ 605(e)(3)(C)(i)(II) from 2 Tacos and Hinojosa, jointly and severally, in the amount of $5,000

and additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from 2 Tacos and Hinojosa,

jointly and severally, in the amount of $15,000.  Plaintiff is entitled to total damages in the

amount of $20,000.

### iii.   ATTORNEY'S FEES AND COSTS

Under the FCA, the Court is required to order the recovery of full costs, including

attorney's fees, to an aggrieved party who prevails.  47 U.S.C. § 605(e)(3)(B)(iii).  The Court

awards Plaintiff $610.00 in costs, which reflect $400.00 in filing fees for the Complaint and

$210.00 in service of process fees for 2 Tacos and Hinojosa.[2]  *See* ECF No. 15-10 at 1–3.

With regards to fees, Plaintiff seeks a one-third contingent fee or, alternatively, the hourly

fees for the time presented in the affidavit of Plaintiff's counsel.  ECF No. 14 at 24.  The Court

determines that the hourly rate is the appropriate method of determining an attorney's fee award,

and therefore must determine whether the requested amount is reasonable.  The determination of

a fees award is a two-step process: first, the court calculates the "lodestar," which is equal to the

number of hours reasonably expended multiplied by the prevailing hourly rate in the community

for similar work, excluding all time that is excessive, duplicative, or inadequately documented.

---

[2] In its Motion, Plaintiff seeks $280.00 for service of process on all Defendants, including Jimenez who
has appeared.  Because Plaintiff seeks only partial default judgment against 2 Tacos and Hinojosa, the
Court does not now award costs associated with serving Jimenez.

*Jimenez v. Wood Cty., Tex.*, 621 F.3d 372 (5th Cir. 2010) (citing *Rutherford v. Harris Cty.*, 197

F.3d 173, 192 (5th Cir. 1999)).  Once the lodestar amount is calculated, the court may adjust it

based on the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714,

717–19 (5th Cir. 1974).[3]

In her affidavit, Plaintiff's counsel estimates her fee to be $2,950.00, based on 11.8 hours

of work at a rate of $250.00 per hour.  ECF No. 15-8 at 3.  The Court accepts her determination

of the lodestar to be reasonable given the description of her time spent on the case and her rates

considering her experience with anti-piracy cases.  *Id.* at 3–4.  The Court sees no reason to make

any adjustment to this figure.

Plaintiff also seeks attorney's fees for post-trial or appellate services.  ECF No. 14 at 24.

In support of this request, Plaintiff's counsel provides an affidavit making estimates related to

attorney's fees necessary in the event, for example, a Defendant files a post-judgment motion or

appeal.  ECF No. 15-8 at 3.  At this time, the Court grants the following conditional awards of

attorney's fees for post-trial and appellate services: $2,500.00 for collection of a judgment

rendered in this case in the event that Plaintiff obtains a writ of execution, writ of garnishment,

writ of attachment or other process; $5,000.00 in the event that 2 Tacos or Hinojosa files a post-

judgment or pre-appeal motion; and $15,000.00 in the event 2 Tacos or Hinojosa files an appeal

to the Federal Court of Appeals for the Fifth Circuit.

IV.    CONCLUSION

---

[3] The *Johnson* factors are (1) time and labor required for the litigation; (2) novelty and difficulty of the
questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other
employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the
client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and
ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional
relationship with the client; and (12) awards in similar cases.  488 F.2d at 717–19.

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Partial Default Judgment against 2 Tacos and Hinojosa.  It is, therefore, **ORDERED**, **ADJUDGED**, and **DECREED** that, with respect to defendants Jesus M. Hinojosa and 2 Tacos Bar & Grill, LLC, d/b/a 2 Tacos Bar & Grill:

1. Plaintiff recover statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from defendants Hinojosa and 2 Tacos, jointly and severally, in the amount of $5,000.00.

2. Plaintiff recover additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from defendants Hinojosa and 2 Tacos, jointly and severally, in the amount of $15,000.00.

3. Plaintiff recover attorneys' fees from Defendants, jointly and severally, in the amount of $2,950.00, which the Court finds to be reasonable and necessary, plus taxable court costs of $610.00.

4. Plaintiff recover the following conditional awards of attorney's fees for post-trial and appellate services, from defendants Hinojosa and 2 Tacos, jointly and severally, in the following circumstances:

   a. $2,500.00 for collection of a judgment rendered in this case in the event that Plaintiff obtains a writ of execution, writ of garnishment, writ of attachment or other process;

   b. $5,000.00 in the event that Hinojosa or 2 Tacos files a post-judgment or pre-appeal motion; and

   c. $15,000.00 in the event 2 Tacos or Hinojosa files an appeal to the Federal Court of Appeals for the Fifth Circuit.

5. All sums awarded above shall bear post-judgment interest at the rate of 0.82% per annum until paid.

6.   All writs and process for the enforcement and collection of this Judgment may issue as

necessary. In connection with any Writ of Execution in this case, the Court directs the

United States Marshals Service to use any means or force reasonably necessary to satisfy

this Judgment.

**SO ORDERED.**

January 26, 2017.

_____
**BARBARA M. G. LYNN**
**CHIEF JUDGE**